## ABERCROMBIE *vs.* BRADFORD.

1. An assignment by an insolvent debtor for the benefit of creditors, which, after empowering the trustee to expose the property to sale on the best terms practicable, either at private sale or public auction, for cash or on credit, as shall in his opinion most comport with the interest of all parties concered, requires him, if the property is not sold within six months, to sell it at public auction, &c., is not rendered fraudulent on its face by a provision that the debtor shall retain possession of certain of the property conveyed until a favorable opportunity for the sale of it shall offer—such possession being expressly limited to the time for the sale at public auction.

2. That a trustee is authorised to sell for cash or on credit, as shall in his opinion most comport with the interest of all parties concerned, is not sufficient to affect the validity of a deed of assignment for the benefit of creditors.

3. Where a deed of assignment is not fraudulent on its face, it is competent to show by parol proof that no secret fraud was intended to be consummated by it.

4. Where the trustee by a deed of assignment is given the discretionary power to sell whenever he thinks proper, either at private or public sale, a provision that the assignor shall retain possession of the chattels conveyed, until a favorable opportunity for the sale of them shall offer, does not impair the right of the trustee to reduce them to his immediate possession, or to maintain trover against one who converts them.

5. The wrongful seizure under an attachment of goods in the hands of a bailee, and taking from him a forthcoming bond for their delivery, is such a conversion as will support an action of trover by the owner against the sheriff.

6. The assent of creditors will be presumed to a deed of assignment, which appropriates the property conveyed absolutely and unconditionally to the payment of their debts.

7. Where a deed of assignment is not fraudulent on its face, the possession and use of the property by the assignor, in conformity with the express provisions of the deed, cannot render it void.

8. The fraudulent intent of the grantor alone will not avoid a deed of assignment for the benefit of creditors.

Error to the Circuit Court of Macon. Tried before the Hon. Geo. W. Stone.

This was an action of trover instituted by the defendant, as assignee of John H. Thomas, against the plaintiff in error, to recover damages for the conversion of two slaves, carriage and

horses, household furniture, &c., which were conveyed to the defendant by said Thomas for the benefit of his creditors, and were levied on after the assignment, but whilst in Thomas' possession, by the plaintiff in error, as sheriff of Macon county, by virtue of several attachments sued out against said Thomas. Upon the levies being made, the property was left in the possession of Thomas, he having executed forthcoming bonds, conditioned for its delivery to satisfy the judgments that should be rendered. The remaining facts necessary to a full understanding of the points decided by the court will be found embodied in its opinion.

BELSER & GUNN, for plaintiff in error:

1. The proof was not sufficient to sustain the action. Abercrombie did not by the levy of the attachment convert the property, and he had no control over it, when it was demanded of him. Clay's Dig. 57, § 11; Vincent v. Cornell, 13 Pick. 294.

2. The deed discloses a possessory interest in Thomas in the property levied on subject to attachment. Battle v. Jones, 2 Ala. Rep. 314; Mariott et al. v. Givens, 8 ib. 314; Allen et al. v. Montgomery Rail Road Co., 11 ib. 438.

3. The assent of the banks, whose debts were due prior to the execution of the deed, was necessary to validate it. Elmes v. Sutherland, 7 Ala. 266; Lockart v. Myatt, 10 Ala. 231 and 271; Pinkard v. Ingersoll, 11 Ala. 9; Kinnard v. Thompson, 12 ib. 491.

4. The deed was fraudulent on its face, and could not be explained by Bradford. Hart v. Crane, 7 Paige, 37; Gazzam v. Poyntz, 4 Ala. 374; Ticknor & Day v. Wiswall, 9 ib. 309; Garland v. Rives, 4 Rand. 282.

5. The entire case discloses an attempt on the part of an insolvent to put copartnership assets beyond the reach of copartnership creditors. Such assignments should not be extended, so as to give new and dangerous facilities. Jackson v. Cornell, 1 Sandf. Ch. 348; Geatner v. Trustees, &c. 2 Barb. 628; Cranshaw v. Maule, 1 Swans. 506; Yale v. Yale, 13 Conn. 185.

6. The objectionable features on the face of the deed are, that the trustee can sell the property for cash "OR CREDIT," according to what in his view may be the "INTEREST OF ALL

PARTIES CONCERNED;" that he is not compelled to sell under *six months;* and that the assignor MAY HOLD a portion of the property conveyed for that length of time, or at least UNTIL A FAVORABLE OPPORTUNITY WITHIN THAT PERIOD is afforded to the said trustee to sell it. Hart v. Crane, 7 Paige, 37; Gazzam v. Poyntz, 4 Ala. 374.

7. The deed and schedules show that within two years prior to its execution, Thomas obtained discounts, &c. to more than $20,000, and that while the assets assigned to Bradford are under $14,000, the sums now due for said assets are also upwards of $20,000 more. Again, after Thomas gave the forthcoming bond to the sheriff, Bradford still let the property remain with him. This proves that Thomas believed he had the right to the possession, and that Bradford acquiesced in his assertion of it, and even permitted him to carry a portion of it with him into Georgia, *subsequent to the execution of said forthcoming bond.* It also shows such a conspiracy between the parties, as to make the acts of the one evidence against the other. Frow v. Ferguson, 11 Ala. 883; Walker et al. v. Miller & Co., ib. 1033; Borland v. Mayo, 8 ib. 105.

9. None of the cases cited by defendant's attorneys, in this court, are like this. They are decisions based on mere mortgages, or on assignments without preference, and on different facts. Marriott v. Givens, 8 Ala. 694; Baxter v. Wheeler, 9 Pick. 21.

COCKE, with whom was A. MARTIN, for defendant:

1. The deed of assignment is not fraudulent *per se.* There is no beneficial interest reserved to the grantor.—Ashurst v. Martin, 9 Porter, 566; The Bank of Mobile v. Clark, 5 Ala. 765; Ticknor & Day v. Wiswall, 9 ib. 305; Baxter v. Wheeler, 9 Pick. 21; Vernon v. Morton, 8 Dana, 251; Christopher v. Covington, 2 B. Monroe, 357. The assignee had the right to take possession of the property left in the charge of the assignor at any moment he chose.—Marriott & Hardesty v. Givens, 8 Ala. 694; Baxter v. Wheeler, 9 Pick. *supra.*

2. The deed not being fraudulent on its face, parol proof is admissible to remove any suspicion of fraud which, in the absence of explanation, might arise out of the retention of possession by the assignor. See authorities above cited.

3. The facts disclosed in the record are sufficient to sustain the action of trover.—Glaze v. McMillion, 7 Port. 279; Thorp v. Burling, 11 Johns. 285; Wintringham v. Lafoy, 7 Cow. 735; White v. Morris, 1 Hawks, 301; Pierce v. Benjamin, 14 Pick. 356; Burgin v. Burgin, 1 Ired. 160; Thompson v. Rowe, 16 Conn. 71; Liptrot, adm'r, v. Holmes, 1 Kelly, 391; Christopher v. Covington, 2 B. Monroe, *sup.*

4. The assignment is general, with preferences in the order in which the creditors are named. Their assent will be presumed, and the assignment is valid unless all repudiate it.—2 Story's Eq. § 1036, a., and cases cited in notes; Hodge et al. v. Wyatt et al. 10 Ala. 271; Cunningham v. Freeborn, 1 Edw. Ch. Rep. 256; Tompkins v. Wheeler, 16 Peters, 106.

DARGAN, J.—The first question we propose to examine is, whether the deed of assignment from Thomas to Bradford is fraudulent on its face, as against the existing creditors of Thomas. The deed conveys a stock of goods, debts, accounts, &c., a considerable quantity of land, the house and lot on which the grantor and his family resided, also three slaves, together with a carriage and horses, and household furniture. That portion of the deed relied on to show that it is fraudulent is in the following language: "In order to carry out completely and fully the object and purpose of this conveyance, the said Joseph H. Bradford is hereby authorised and empowered to enter upon the premises and take possession of all and singular the lands and tenements, household furniture, negroes, goods, wares and merchandize, horses, carriage, notes, bills and accounts, without molestation, hindrance or let, and expose to sale, on the best terms practicable, either at private sale or public auction, for cash or on credit, as shall in the opinion of the trustee most comport with the interest of all parties concerned, all the above described lands, goods, negroes, horses, carriage and furniture, and disburse the proceeds as hereinbefore described; provided, that if the lands and other property herein mentioned are not sold within six months, then and in that event it shall be the duty of the trustee to expose all the personal property to sale to the highest bidder at public auction, in the town of Tuskegee, and the real estate to sell in like manner at the county seat in which it is situated,

after giving thirty days notice of the time and place of such sale in newspapers of the county, or the nearest thereto, in which the sale shall be; and provided, however, and it is understood, that the said John H. Thomas shall retain possession of the house and lot on which he resides, the furniture, servants, carriage and horses, until a favorable opportunity for the sale of them shall offer, provided that this right of possession shall not extend beyond the time specified for the sale at public auction of the lands and other property described."

1. The first objection to the deed growing out of this clause is, that it reserves a benefit to the grantor, inasmuch as he is permitted to retain possession of the house and lot, servants, furniture, and horses and carriage, until a favorable opportunity for selling them shall occur. This right to the possession, however, is limited to the time when, by the terms of the deed, it becomes the duty of the trustee to sell at public auction, and which was six months from its date. The principle is too well established by the decisions of this court now to be questioned, that a debtor in failing circumstance may convey his property in trust to pay his creditors, giving by such conveyance preference to some over other creditors—provided he relinquish all control over the property and stipulates for no pecuniary benefit for himself out of the effects assigned, but fairly and honestly devotes the whole for the benefit of his creditors. Ashurst v. Martin, 9 Port. 566; Gazzam v. Poyntz, 4 Ala. 374. In the case of The Planters' & Merchants' Bank of Mobile v. Clark, 5 Ala. 765, the deed of assignment was of a plantation, negroes and stock, and contained a provision that the trustee might, if he saw proper, and under his supervision, permit the grantor to reside on the plantation and to have the management of the growing crop, until the sale should take place according to the provisions of the deed. The court held that this provision did not render the deed void on its face; that if this provision had not been expressed in the deed, the trustee might have employed the grantor to superintend and manage the growing crop, without affecting the validity of the deed, and therefore the provision expressed, as it did not change the operation of the deed, could not stamp it with the impress of fraud or impair its legal efficacy. In the case of Baxter v. Wheeler, 9 Pick. 21, it was decided that a covenant in a gen-

eral assignment, that the grantor should retain the possession of the property and use and occupy it without waste, until the same should be sold according to the terms of the deed, was not *per se* fraudulent. To the same effect is 12 Pick. 451; 11 Wend. 240; Cannon v. Peebles, 2 Iredell. If by the terms of the deed the entire property is appropriated by the grantor to the payment of his debts, without any reservation of interest beneficial to himself and prejudicial to the creditors, the deed cannot be pronounced fraudulent on its face. Here the trustee had the right at any moment to take possession of that portion of the property left by the deed in the possession of Thomas, if a favorable opportunity occurred to sell it, and if no such opportunity offered, at the expiration of six months it became his duty to expose it to public sale. The trustee was the sole judge whether he should sell before the expiration of six months. It *was his duty* to do so, if the interest of the creditors *required it*, and the grantor had no right to resist the exercise of this power by the trustee. This being the legal effect of the deed, we are not authorised to pronounce it fraudulent. Had the trustee taken possession of the property, it would necessarily have been his duty to take care of it, until he met with an opportunity to sell, and that the possession was to remain with the grantor until that opportunity accrued, does not render the deed fraudulent, as the deed made it the duty of the trustee at all events *to sell at* the expiration of six months, and sooner if an opportunity offered.

2. The next objection to the validity of the deed is, that it authorises the trustee to sell for cash or on credit, as shall in his opinion comport most with the interest of all parties concerned. In the case of Ashurst v. Martin, before referred to, the deed contained a provision that the trustee should sell for such prices and on such terms as he may deem expedient.— The court said in reference to this clause, that such a power was necessary to enable the trustee to execute the trust, but must be exercised in reference to the objects of the trust and the interest of the creditors, in good faith. The power to sell for cash or on good credit does not vary in legal effect from the power to sell on such terms as he may deem expedient, and we cannot pronounce that the reservation of such a power within itself renders the deed void. Some of the debts (as in

Abercrombie v. Bradford.

this case) may not be due at the time the deed is executed—some may be. It is the duty of the trustee to execute the trust speedily it is true, but yet in such manner as will best subserve the interest of the creditors. He ought to sell for cash or on such credit as will not unreasonably delay the payment of the debts. To require the sale in all instances to be for cash only, may work a prejudice to all or some of the parties interested. We think the trustee ought to have a reasonable discretion in fixing the terms of the sale, and that he is clothed with such discretion as may benefit the creditors, if discreetly exercised, is not sufficient within itself to authorise us to pronounce the deed fraudulent.

3. As we are of the opinion that the deed is not void on its face, it is not absolutely necessary to consider the question growing out of the admission of the evidence to explain how the clause came to be inserted, which provided for the retention of the property by the grantor until an opportunity to sell occurred. It may be proper, however, to remark, that when a deed is void because of fraudulent provisions incorporated in it, parol testimony cannot be received to expunge from the deed these fraudulent provisions; for inasmuch as they exist in the deed and form a part of it, they could not be stricken out by parol proof, and if the deed is fraudulent on its face, no parol evidence can be received to avoid the legal consequences that attach to the deed in consequence of such provisions. The construction of a deed is a question of law, and if by the terms of the instrument it is void, no other judgment can be pronounced than that it is null and void. To sustain a deed void on its face, by resorting to parol proof, would in my judgment be to create a new instrument and then to give effect to its validity. See Grover v. Wakeman, 11 Wend. 187; Gazzam v. Poyntz, 4 Ala. 374. But as the deed is not fraudulent on its face, the admission of the parol proof, showing under what circumstances the provision was inserted, and the intent that governed the parties in inserting it, is not an error of which the plaintiff in error can complain, for the deed being *prima facie* good, the plaintiff had the right to show by parol proof that no secret fraud, not apparent on the deed, was intended to be consummated by it.

4. The deed, through which the plaintiff claimed title, bears

date the 14th day of January 1846, and the defendant, as she-riff of Macon county, levied an attachment on the property on the 20th of February 1846. Thomas, in whose possession the property was at the time of the levy, gave a forthcoming bond for its delivery, retained the property in his possession after the levy, and removed some of it to Georgia, but delivered it up to the sheriff afterwards, according to the condition of the bond. There was testimony tending to show that Bradford demanded the property of the sheriff before suit brought, who replied that he did not have possession of it. The suit was instituted in April 1846. Under this evidence, the defendant requested the court to charge the jury that the plaintiff could not recover, which was refused.

It is contended by the plaintiff in error, that by the terms of the deed the plaintiff below had not such a right of possession. as would enable him to bring trover. The general rule is that the person who has the absolute title to the chattel may main-tain this action, although he may not have had the actual pos-session; for it is a rule of law that the general title to personal property creates a constructive possession. 1 Chitty's Pl. 9th Am. edit. 152. The plaintiff must however show, that he is entitled to the right of immediate possession; for if the goods are leased for a term, whereby the lessee became entitled to the possession during the term as against the owner, trover cannot be maintained by the general owner against a wrong doer who converts the goods in the possession of the lessee during the continuance of the lease. 1 Chitty's Pl. 152; 2 Greenl. Ev. §§ 640. But trover may be maintained by the general owner who has delivered a chattel to a bailee or ser-vant that has no right to the possession as against the owner, but who holds it for him. Thorp v. Burling, 11 Johns. 285; Wintringham v. Lafoy 7 Cow. 735. So a gratuitious bailor of cattle may maintain trover against a wrong doer who takes them from the possession of the bailee. 3 Harrison's Digest, title Trover, 6387. These are the general principles by which we are to ascertain whether the plaintiff had such a right to the possession of the property as enabled him to maintain the action of trover, and we think, under the facts of this case, the action can be maintained. The title vested in the plaintiff by the deed drew to it the right of possession, and the possession

that Thomas, the grantor, had under the deed, is like the possession of a gratuitous bailee. It gave him no fixed right or interest in the property for any fixed or definite time,—but he held the property for the plaintiff without any right in, or to it, in opposition to the title or right of the plaintiff. The correct rule, in my opinion, is this, the general owner may bring trover unless the tort was committed on the actual possession of one who had a fixed and determinate interest in the chattel or in the use of it, which entitled him to the possession in opposition to the right of the general owner, and which he could not defeat. Here, Thomas reserves the possession of the goods levied on until a favorable opportunity to sell offered, but certainly the trustee, who was charged by the terms of the deed with the duty of selling, must be the sole judge whether he should sell or not, or when he should sell; he had the right then to put an end to the possession of Thomas at any moment he *saw fit, for the purpose* of selling them. Thomas therefore had no right to the possession which the plaintiff at any moment could not defeat—he occupied the position of one having the care and custody of the goods of another, and trover may be maintained against a stranger by the general owner for a conversion of goods, the possession of which is thus held without a fixed right, in opposition to the right of the owner.

5. We think also that the levy of the attachment and the taking a forthcoming bond, was evidence of a conversion. It is said, that if goods be wrongfully seized as a distress, though they be not removed from the place they were, yet trover may be supported, because the possession in point of law is changed.—1 Chitty's Pl. 154. So when one assumes to exercise control or dominion over goods in exclusion of the right of the owner, it is a conversion, even if there be no manual taking of the goods. Reynolds v. Shuler, 5 Cowen, 323; 7 Cow. 735. Here, the defendant assumed to control the goods by requiring a bond for their forthcoming, and they were delivered to him after suit brought, in pursuance of the condition of the bond. This was an assumption of right or authority over the goods in opposition to the right of the plaintiff, and is a conversion.

6. The defendant requested the court to charge the jury,

that it was necessary for the plaintiff to show, in order to entitle him to recover, that the Branch Bank at Montgomery, one of the prefered creditors, had assented to the deed, or accepted its benefits. He also requested the court to charge that it was necessary to show that all the prefered creditors had assented to the deed, or he could not recover. The deed is one purporting to convey all the property of the grantor absolutely and unconditionally for the purpose of paying the debts in the manner prescribed in it—no condition is prescribed to the creditors before they can receive the benefits of it. To such a deed the assent of the prefered creditors will be presumed. 2 Story's Equity, § 1036, last edition; Tompkins v. Wheeler, 16 Peters' 106; 11 Wheat. 96; Cunningham v. Freeborn, 1 Edw. Ch. Rep. 256; Pope v. Brandon, 2 Stew. 40. If the deed had not been absolute and unconditional, or had it prescribed any conditions to the creditors before they could entitle themselves to its benefits, it would then have been necessary for the plaintiff to have shown that the prefered creditors had accepted the provisions of the deed before the levy was made, and if they had not assented to the deed prior to the levy, the seizure of the property would have worked a revocation of it.—Elmes v. Sutherland, 7 Ala. 262; Hodge v. Wyatt, et al. 10 Ala. 271. Here, however, the deed is executed by an insolvent debtor, and conveys all his assets absolutely and unconditionally—no terms are prescribed to the prefered creditors before they can receive the benefits of it. To such a deed their assent will be presumed.

7. Again, it is contended that the court erred in refusing to give the 14th charge as prayed by the defendant, which was, "that if in connection with the deed to the plaintiff, it is proved that Thomas was insolvent at the time it was executed, and this was known to the parties, and if Thomas had possession of the property at the time the attachment was levied, and the use of the property was valuable to him, and that he carried a portion of it to Georgia, that these circumstances render the deed void, and the testimony of the attorney who drew the deed was insufficient to show it to be fair."

We think the court correctly refused to give this charge for several reasons. The evidence shows that the possession was held in conformity with the terms of the deed, and no benefit

41

is shown to have resulted to the grantor, unless it was from the temporary use of that portion of the property that the deed provides might remain in his possession until sold.  The possession and use shown to have been enjoyed in this case are allowed by the deed, and if the deed be not void on its face, parol proof that the grantor retained possession in conformity with the deed, certainly cannot render the deed fraudulent, although the grantor was insolvent.  Nor was there any proof that the creditors, who are prefered in the deed, participated in any manner in any fraudulent intent, even if one existed on the part of the grantor, and it has been repeatedly held by this court, that a deed of trust, or a mortgage, to secure a creditor, is not void because of the fraudulent intent of the grantor, if the creditor did not know of, or participate in the fraud.—Hooks v. Anderson, 9 Ala. 704; Stover v. Herrington, 7 Ala. 142.

It is unnecessary to examine the other assignments of error. The view of the law, as expressed in this opinion, is conclusive to show there is no error, and the judgment must be affirmed.

CHILTON, J., not sitting.